

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1490
Re: Amount of State occupation
tax to be levied upon and col-
lected from traveling theatres
and shows under Article 7047,
Subdivision 22a, Sec. 2, V.A.C.S.

By your letter of September 22, 1939, you direct the
attention of this Department to the administrative interpretation
given out by you to the tax assessors-collectors of the various
counties of Texas upon that portion of Section 2, subdivision 22a,
Article 7047, Vernon's Annotated Civil Statutes, providing as fol-
lows:

". . . provided, further, if any opera house, thea-
tre, tent, airdome or other such structure is transported
from place to place, and is used in the manner and for
the purposes herein set out in more than one city, town
or village, only one annual occupation tax shall be col-
lected from the owner, proprietor or operator of said
opera house, theatre, tent, airdome or other structure,
as set out in Section 1 hereof; . . ."

In reaching this administrative ruling, you construed
the foregoing tax measure in connection with Article 119, Penal
Code, which reads as follows:

"No occupation tax receipt or license taken out by
a merchant of a lower class than the one to which he
properly belongs shall be any protection against a prose-
cution for knowingly pursuing that of a higher class and
failing to pay the occupation tax due therefor."

Your administrative ruling to the various tax assessors-collectors of Texas, based upon the foregoing statutes, is fully set forth in your letter as follows:

"This Department in its interpretation of the law has heretofore ruled, and has so instructed the County Tax Assessors-Collectors, that the provision hereinabove quoted in Section 2, Article 7047, subdivision 22a, must be read in connection with the provisions of Article 119, Penal Code, and that the owners or operators of any such shows or exhibitions which travel from place to place and give performances must prepare their itinerary in advance and pay the State occupation tax at the rate levied for the city, town or village of the largest population in which they will perform. The County Tax Collectors have been advised further that if the State tax is paid at the rate prescribed for a certain population in which a minimum and maximum number of inhabitants is fixed by the Act that the license issued therefor can not be used in cities or towns with a larger population than the maximum fixed without violating the said Article 119 of the Penal Code. In other words, under our interpretation of the two provisions when considered together, if the owner or operator of any such traveling show should pay a fee of $5.00 for a State license to perform in towns of less than 1000 inhabitants and should thereafter perform in a city or town with a population of more than 1000 inhabitants he would be subject to prosecution under the said Article 119, for pursuing an occupation of a higher class than the one to which he properly belongs."

You desire to be advised by us if your interpretation of the pertinent statutes is correct, and if not correct, you ask if the owners or operators of traveling shows and theatres will be permitted to operate for a year anywhere in the State of Texas upon the payment of the minimum annual State occupation tax of $5.00, levied upon shows and theatres exhibiting in cities, towns and villages of 1000 inhabitants or less.

In connection with this request, you refer to and attach a copy of an opinion by Assistant Attorney General John J. McKay of date June 25, 1937, directed to you, and holding that a traveling theatre or show, under the tax measure involved here, could open the season in a city, town or village of 1000 inhabitants or less, and pay in advance the annual occupation tax thereon of $5.00, and continue for the balance of the year to travel and perform in cities of higher population brackets without paying any additional tax.

Inasmuch as a reconsideration and review of the foregoing opinion will be necessary to reach a conclusion upon the instant question, we deem it advisable to review all outstanding opinions upon this identical question by former administrations. In July, 1927, Assistant Attorney General H. Grady Chandler construed the then existing occupation tax on traveling tent shows and theatres and held them not to be subject to an occupation tax. However, an examination of this opinion and existing statutes demonstrates that the law has been amended since the issuance of this opinion and that the opinion referred to was at the time written in all things correct. However, we do find an opinion by Assistant Attorney General H. L. Williford, of date May 14, 1938, directed to Honorable Jim Nance, Sheriff, Tax Assessor-Collector, Terrell County, Texas, diametrically opposed to the opinion by Assistant Attorney General John J. McKay hereinabove adverted to, and holding that under the existing law, the owner, proprietor or operator of a traveling theatre or show would owe an additional occupation tax in each city, town, or village in which performances were given, according to the graduated amount fixed by subdivision 22a, Article 7047, Vernon's Annotated Civil Statutes, upon a population basis.

After due consideration, we have reached the deliberate conclusion that we cannot agree with either of these outstanding opinions. On the contrary, we agree with the administrative ruling given by you upon this question but not upon the reasoning employed by you to reach this result.

In this connection we do not find that Article 119, Penal Code, relied upon by you, affords us any assistance upon this question because same provides that "no occupation tax receipt or license taken out by a <u>merchant</u> of a lower class than the one to which he properly belongs" shall afford protection from prosecution for pursuing an occupation of a higher class. Penal laws being strictly construed, we do not feel that we can bring within the condemnation of this penal statute an owner, operator or proprietor of a traveling tent show or theatre - in no sense a merchant.

Our conclusion rests solely upon a proper construction of the occupation tax statute involved here, unassisted by any authorities of this or other jurisdictions, because our research has failed to develop any. In approaching this question of statutory interpretation, we point out that the statute in question is open to grave doubt, as indicated by the contrariety of opinion by this Department hereinabove referred to. In such a case we may properly invoke the recognized rule of statutory construction that, if possible to do so without doing violence to the language of a statute, a reasonable rather than an unreasonable construction and result will be

given such statute. We are in disagreement with the opinion prepared by Assistant Attorney General John J. McKay, because, in its ultimate result and effect, it places upon the occupation tax measure involved an unreasonable interpretation, when a reasonable result and conclusion could have been reached from the language of the measure without doing violence thereto. This opinion allows the owner, proprietor or operator of a traveling theatre, tent or other structure capable of being transported from place to place, to designedly select some cross-road tank-town for a one night stand on January 1st of a given calendar year, gladly pay the annual occupation tax of $5.00 fixed by Section 22a upon such shows or exhibitions in towns and villages of less than 1000 inhabitants, and thereby be accorded the continuing and valuable right of exhibiting and performing for the balance of the year in the metropolitan centers of Texas without paying an additional tax. In fact, it is possible and not improbable that such theatre or show might remain in the large cities of our State for the greater part of the tax year and escape with an occupation tax of $5.00, while the theatres and shows permanently exhibiting in such cities would be paying an annual occupation tax of $75.00.

We think no such unreasonable result was intended by the Legislature or required by the language of the statute. It is true that the portion of the Statute involved here and set out above, does contemplate the collection of only one annual occupation tax from the owner or operator of a traveling theatre or show, but it does not say that such annual occupation tax shall be computed and fixed by the smallest population bracket of any city, town or village in which such theatre or show may commence its operations for the year. The statute is silent as to the amount of such annual occupation tax, but we think the more reasonable interpretation is to say that the one annual occupation tax should be fixed and computed by the population brackets of the largest city in which such traveling show or theatre shall exhibit or perform. This construction will place the local theatre or show and the traveling theatre or show upon a fair basis, and is certainly not negatived by anything in the act.

On the other hand, we are not prepared to go as far as the opinion by Assistant Attorney General H. L. Williford does, and hold that the owner or operator of a traveling theatre or show would be liable for an additional occupation tax for every exhibition in a different city, town or village. Under the Williford opinion, to illustrate its practical application, if a traveling theatre or show exhibited in a town or village of 1000 inhabitants or less an annual tax of $5.00 would accrue; then if the show moved to a town or village of between 1000 inhabitants and 2500 inhabitants an additional tax of $15.00 would accrue; and as the show continued its travels and

exhibited in towns of increasing population the occupation tax thereon would pyramid to an oppressive, if not confiscatory extent. This is manifestly an unreasonable interpretation of the statute, and we believe the writer of this opinion must have overlooked Section 2 of subdivision 22a, Article 7047, Vernon's Annotated Civil Statutes, providing that "only one annual occupation tax shall be collected from the owner, proprietor or operator" of a theatre or show which is transported from place to place.

We think the reasonable middle-ground between the two extremes of construction represented by the McKay opinion on the one hand and the Williford opinion on the other, is the opinion hereby given that only one annual occupation tax shall be collected from the owner or proprietor of these traveling shows or theatres, in accordance with the statute above referred to, but that such one annual occupation tax shall be in an amount fixed by subdivision 22a, Article 7047, Vernon's Annotated Civil Statutes, for an exhibition in a city, town or village of the highest population brackets in which such traveling show or theatre shall be or is intended to be exhibited during the given tax year. It is common knowledge that the generality of "theatrical or dramatic presentations, musical comedy shows, moving pictures" etc. have a fixed itinerary or schedule of operation long in advance of the actual showing. In any event, we believe it was contemplated by the Legislature that the owner or operator of such exhibitions should determine in advance the maximum population of the cities, towns and villages in which performances were to be had during the tax year, and pay one annual occupation tax on that basis. To illustrate, if it was contemplated that performances or exhibitions would be given in cities and towns of 10,000 inhabitants and under 15,000 inhabitants, or in any cities and towns of lesser population brackets, an annual occupation tax of $30.00 would be due, and performances could not be had in cities and towns in excess of 15,000 inhabitants, because you would not have issued a tax receipt to cover such operation.

Trusting this fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Pat M. Neff, Jr.
Assistant

PMN:N

APPROVED OCT 28, 1939

AL OF TEXAS

APPROVED
OPINION
COMMITTEE